(No. 51006.—

8930 SOUTH HARLEM, LTD., Appellee, v. ALBERT F.
MOORE *et al.* (Albert F. Moore, Appellant).

*Opinion filed October 19, 1979.*

214

MORAN, J., specially concurring.

Barnard, Marconi & McGrath, Ltd., of Chicago (Ronald L. Barnard and William V. McGrath, of counsel), for appellant.

Stuart C. Wallace, of Chicago (Ellis B. Rosenzweig, of Chicago, of counsel), for appellee.

MR. JUSTICE RYAN delivered the opinion of the court:

This case involves a dispute concerning two conveyances covering the same property, one involving the sale of the real estate, and the other a lease which was executed between the time that the contract for sale was entered into and the deed to the property was delivered. The land was registered under "An Act concerning land titles" (Ill. Rev. Stat. 1973, ch. 30, par. 45 *et seq.*). This act provides for a system of land-title registration commonly known as a Torrens system, taking its name from the premier of South Australia who instituted such a system there in 1858. (B. Schick & I. Plotkin, Torrens In The United States 11 (1978).) Although the land was registered, the grantee under the deed had not registered the contract for sale or the deed, and the lessee had not registered the lease.

The plaintiff in this case, 8930 South Harlem, Ltd., Inc., which holds under the lease, sued Albert F. Moore, the grantee in the deed, in the circuit court of Cook County, seeking a declaration that the lease prevails over the deed, which covered a 25-foot strip across one side of the leased property. During the pendency of the suit, Moore registered his deed with the Cook County registrar of land titles. Moore then filed an affirmative defense to the plaintiff's complaint, alleging the registration of the deed by virtue of which he claimed he took the property free of any interest created by the lease. Plaintiff then filed an amended count II of the complaint, joining as defendant the registrar of titles for the County of Cook, and prayed that the registrar of titles be ordered to register the lease as a prior charge against Moore's title. The trial court, seeking to do equity, held that the plaintiff did not have a leasehold interest in the property but had a license for its use and fixed the duration of the license for approximately one-half of the term of the lease. The court also made

some other equitable adjustments and held in the judgment order that, by registering the deed in Torrens, Moore did not defeat plaintiff's right to an interest in the property. Since neither had registered their interests before the lawsuit, Moore's registration of his deed after suit had been filed, the order stated, did not commend itself to a court of equity. The court also found that since Kladis (the original lessee under whom plaintiff holds the property) and Moore had an understanding that the lessee would pay $1,500 toward paving the strip, Moore, by permitting the lessee to pay for the paving and to use the property, is estopped to deny plaintiff's right to use the 25-foot strip of land in dispute. The trial court also found that the plaintiff is entitled to have the lease registered with the registrar. The appellate court reversed the trial court's holding that the plaintiff only had an irrevocable license, but affirmed other holdings of the court. (61 Ill. App. 3d 293.) We granted Moore's petition for leave to appeal.

Prior to August 31, 1973, Robert Garber sought to purchase a 174-foot square tract of land which was registered in Torrens. Before he could purchase the property, Garber had to secure a release from Albert F. Moore of a right of first refusal which Moore held on the entire tract. In order to secure this release, Garber agreed in writing to sell Moore a 25-foot strip along the edge of the tract. This agreement, which was entered into on August 31, 1973, will be discussed later in this opinion. This agreement was not registered, although both Garber and Moore knew that title to the property in question was registered in Torrens. Subsequent to this agreement, Garber purchased the 174-foot-square tract of land and obtained a Torrens certificate.

In the fall of 1973 Garber negotiated with Kladis, the predecessor in interest of the plaintiff in this action. Kladis had no knowledge of the August 31, 1973, contract with

Moore. On December 5, 1973, Garber leased the 174-foot tract of land to Kladis. The lease provided for occupancy on March 1, 1974, and was to run for a period of 15 years with an option to renew for another 5 years. Garber then began the erection of a restaurant building on the property. The record indicates that Kladis was at the building site and worked with the contractor regularly thereafter. Because Kladis did not know that the tract of land was registered in Torrens, he failed to register his lease and he made no attempt to record the same. On December 17, 1973, subsequent to the execution of the lease, Moore sued Garber for specific performance of the August 31, 1973, contract. A settlement of that litigation was arrived at in May of 1974 under which Garber agreed to convey the 25-foot strip to Moore. Garber informed the lessee of this agreement on June 2, 1974, and on June 4, 1974, the property was conveyed to Moore. Moore recorded the deed but did not register the same in the registrar's office as required by section 54 of the Act (Ill. Rev. Stat. 1973, ch. 30, par. 98).

A dispute arose between Moore and the plaintiff herein, 8930 South Harlem, Ltd. (Kladis' successor under the lease, hereinafter referred to as lessee), in July of 1974 concerning the use of the 25-foot strip of land. Initially, as noted above, there was an agreement to share the cost of paving this strip. Eventually, however, the lessee paid the entire cost of paving. The parties then agreed that the lessee's restaurant customers would not be allowed to use Moore's parking lot during the daytime. This agreement was also abandoned. Later there was a dispute concerning the erection of fences on the strip by Moore, cutting off the 25-foot strip from the lessee's property. The lessee destroyed these fences and Moore erected a heavy-duty guard rail to eliminate lessee's use of this strip. On October 7, 1975, the lessee filed this lawsuit against Moore and Garber to resolve the dispute. Moore counterclaimed

against Garber. As noted earlier, subsequent to the filing of this suit, Moore registered his deed for the strip under Torrens. This registration was accomplished on February 17, 1976, without notice to the registrar of the pending lawsuit and without notice to the lessee of the registration. Also, as noted above, the lessee thereafter amended his complaint to include the registrar of titles as a defendant and to seek an order requiring the registration of his lease.

Both Moore and the plaintiff urge us to rule that certain arguments cannot be advanced in this court because they had been forfeited by the other parties' failure to assert them in the appellate court. We have read the briefs addressed to the appellate court and we conclude that all of the pertinent issues have been adequately preserved for our review.

Moore's eventual registration of his deed cannot be said to terminate or destroy the right of the lessee acquired under the lease from Garber. The Act was designed to encourage reliance upon the state of the registered title. (*Nailburg v. Hendriksen* (1939), 370 Ill. 502, 507.) This court recently stated that the principal objective of the Act is to provide an individual system of registration whereby an intending purchaser of land can determine from the register the conditon of the land. (*Echols v. Olsen* (1976), 63 Ill. 2d 270, 275.) Under the circumstances of this case the certificate issued to Moore on the registration of this title cannot control the status of the land as between the parties to the suit filed by the plaintiff. These parties do not fall within the class of persons intended to be protected by the requirements of the Act. (*Naiburg v. Hendriksen* (1939), 370 Ill. 502, 507.) Moore did not look to the register to determine the condition of title. Instead, he intended to use the Act to prevail in a controversy concerning the respective rights in the real estate involved, which controversy was in litigation, and Moore was a party to that litigation. Only after the issues had been formed

did he seek to use the Act to defeat the claimed paramount interest of the plaintiff. This is not the purpose of the Act. Proceedings under the Act are governed by rules of equity. (*Naiburg v. Hendriksen* (1939), 370 Ill. 502, 505-06.) In our case the trial court correctly held that Moore's conduct in registering his deed during the litigation did not commend itself to a court of equity. The Act provides for a determination in a court of the respective rights of competing interests, including its determination that the registration of Moore's title did not defeat the interest of the plaintiff.

In *Echols* this court stated:

> "The holder of an unregistered interest has strong claims to equitable consideration, especially when, as here, the holder of an interest claiming preference *** did not rely upon the absence of registration." (*Echols v. Olsen* (1976), 63 Ill. 2d 270, 277.)

Since the parties here did not register their competing interests and had not relied upon the register, the plaintiff herein, as the holder of an unregistered interest, has "strong claims to equitable consideration." The trial court, therefore, properly held that the registration of the deed by Moore did not defeat the plaintiff's claim to an interest in the property.

In *Echols* it was also noted that the provision of the Act must be construed in light of the established law of property. (*Echols v. Olsen* (1976), 63 Ill. 2d 270, 275-76.) A difference exists in the established law of property between the legal significance of a sale of an interest in land and a contract to sell an interest in land. Whereas the sale of the interest in land results in the actual transfer of the title from the grantor to the grantee, the contract for sale is only an agreement to be performed in the future and which, if fulfilled, results in a sale. *In re Estate of Frayser* (1948), 401 Ill. 364, 373.

A lease also is a conveyance of an interest in real estate, although it conveys a lesser interest than does a deed executed to consummate a sale. (See *Pierce v. Pierce* (1953), 351 Ill. App. 336, *aff'd* (1954), 4 Ill. 2d 497; *Koehler v. Southmoor Bank & Trust Co.* (1963), 40 Ill. App. 2d 195; 49 Am. Jur. 2d *Landlord and Tenant* secs. 2, 18 (1970).) Thus the lease from Garber to Kladis conveyed to the latter the leasehold interest in the property for the term of the lease. The leasehold interest conveyed consisted of the right of the use and possession of the premises for the full term of the lease. *People ex rel. Korzen v. American Airlines, Inc.* (1967), 39 Ill. 2d 11, 17.

Moore contends that by virtue of the principles of equitable conversion he acquired an equitable title to the real estate under the contract. The trial court made no finding as to whether the August 31, 1973, agreement between Moore and Garber was sufficiently specific to bring about a conversion of the title to the property in question to place the equitable title in Moore. The agreement was a handwritten note signed by both parties obviously not drawn by an attorney. It provided for no time of performance and it was conditioned on Garber obtaining "business zoning." " 'An equitable conversion is implied only when the intent is unequivocal and the implication leaves no substantial doubt.' " (*In re Estate of Krotzsch* (1975), 60 Ill. 2d 342, 346.) "In order to work a conversion the contract must be such that a court of equity can specifically enforce it against an unwilling purchaser." (*Masters v. Masters* (1927), 325 Ill. 429, 436; see also *Rhodes v. Meredith* (1913), 260 Ill. 138; *Rodisch v. Moore* (1914), 266 Ill. 106; *Shay v. Penrose* (1962), 25 Ill. 2d 447.) Moore filed suit against Garber for specific performance of the August 31, 1973, agreement; however, specific performance was not decreed. On May 1, 1974, while the suit was pending, Moore and Garber entered into another agreement reciting that a dispute had arisen as to

the performance of the August 31, 1973, agreement and that a suit for specific performance had been filed. It was then agreed that Garber would cause to be delivered to Moore a trustee's deed covering the property in dispute and Moore warranted to Garber the zoning on the property as of May 1, 1974. Pursuant to this latter agreement Garber did cause to be delivered to Moore a trustee's deed to the property on June 4, 1974.

Reconversion is an imaginary process by which a prior constructive conversion is annulled and the converted property restored, in contemplation of law, to its original state. (*Keller v. Schobert* (1974), 58 Ill. 2d 137; *Hoopston Public Library v. Eaton* (1918), 283 Ill. 449.) Reconversion may be by agreement and acts of the parties which plainly show an intention to reconvert. (*Bouslough v. Bouslough* (1922), 306 Ill. 24.) Plainly, the August 31, 1973, agreement, whatever its original effect may have been, was abondoned by Moore and Garber when they executed the May 1, 1974, agreement in settlement of the dispute that had arisen over the August 31, 1973, document. Under the peculiar facts of this case the doctrine of equitable conversion has not placed in Moore an equitable interest superior to the legal interest conveyed to Kladis by the lease. This conclusion is fortified by the conduct of Moore, which the trial court found estopped him from denying the lessee's interest in the property. We discuss this conduct later.

Moore contends that although the interest of the lessee may have been a legal one had the land not been registered in Torrens, section 54 of the Torrens Act (Ill. Rev. Stat. 1973, ch. 30, par. 98) prevents the lease from creating that legal interest until the document is registered as required by the Act. Section 54 provides:

> "A deed, mortgage, lease or other instrument purporting to convey, *** lease, charge or otherwise deal with registered land, *** other than a will or lease not

exceeding five years \*\*\*, shall take effect only by way of contract, between the parties thereto, and as authority to the registrar to register the transfer, mortgage, lease, charge or other dealing upon compliance with the terms of this act. On the completion of such registration, the land, estate, interest or charge shall become transferred, mortgaged, leased, charged or dealt with according to the purport and terms of the deed, mortgage, lease or other instrument."

Moore contends that since his interest was an equitable interest, and since the lessee's interest by virtue of section 54 was only a contractual right, his interest, being prior in time, must prevail. Although the Torrens Act may have changed the nature of the lessee's interest, it does not follow that it reduced it to one equal to or less than that possessed by Moore. By registering their respective interests Moore would have acquired only the contractual right to have the property conveyed to him, whereas Kladis would have acquired an outright conveyance of an interest in the property. We cannot say that absent registration the greater interest of Kladis' would have become inferior to that of Moore.

The trial court found that Moore agreed with Kladis concerning the use of the 25-foot strip, that Moore and Kladis agreed to share the cost of paving the disputed property, and that thereafter Moore permitted the lessee to pay the entire cost of paving. The court found that by this conduct Moore was estopped to deny plaintiff's interest in the property. Although Moore attempted to explain his conduct, the trial court chose not to accept his explanation. The finding that the conduct created an estoppel was supported by the evidence.

Moore also argues that *interesse termini*, an ancient concept that under a lease a lessee has no interest in property until he actually enters into possession, requires that he prevail. This ancient archaic principle has no application to the facts of this case. The lease was entered

into on December 5, 1973, to take effect March 1, 1974. A restaurant building was under construction on the property and Kladis and his agent were in possession of the property during the construction before and after the effective date of the lease. On April 22, 1974, the lease was assigned by Kladis to the plaintiffs herein, who, in turn, were in possession of the property after that date in preparation for the operating of their restaurant. We can only conclude that Kladis and the plaintiff herein had taken possession under the lease prior to the execution of the deed from Garber to Moore in June of 1974 and that *interesse termini* has no application.

We cannot affirm the trial court's order concerning rental payments for the 25-foot strip because of our holding that the lessee is entitled to the possession and use of the strip during the term of the lease instead of only having a 7½-year license as the trial court held. The cause should be remanded to the circuit court to recompute rental payments in light of this opinion.

The judgment of the appellate court is affirmed except as to the rental payments, and the cause is remanded to the circuit court of Cook County for the purpose of computing rental payments.

*Affirmed in part and reversed*
*in part and remanded,*
*with directions.*

MR. JUSTICE MORAN specially concurs.