In re Lilly C. ANDERSON, Debtor.

BANK OF HONOLULU, Plaintiff,

v.

Lilly C. ANDERSON, Defendant.

Bankruptcy No. 83–0073.

United States Bankruptcy Court,
D. Hawaii.

July 7, 1983.

Gregory Conlan, Honolulu, Hawaii, for plaintiff.

James Duca, Honolulu, Hawaii, for defendant.

## MEMORANDUM DECISION AND ORDER

JON J. CHINEN, Bankruptcy Judge.

On April 11, 1983, Bank of Honolulu, hereafter "Bank", filed a Complaint to Modify Stay or Alternatively, to require Lilly C. Anderson, hereafter "Debtor", to assume or reject executory contract. On May 6, 1983, Debtor filed an answer and a motion for judgment on the pleadings.

A preliminary/pre-trial hearing was held on May 9, 1983, at which time the Court set the Motion for Judgment On the Pleadings for hearing on May 31, 1983 and continued the stay until the final hearing was held on June 10, 1983. At both hearings, held as scheduled, Gregory P. Conlan, Esq., represented Bank and James Duca, Esq., represented Debtor.

Based upon the evidence adduced, the memoranda and records filed herein and arguments of counsel, the Court makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

On March 14, 1978, Bank, as vendor, and Debtor, as vendee, entered into an agreement of sale, hereafter "Agreement", covering a leasehold property situate at 565 Portlock Road, Honolulu, Hawaii, hereafter "Leasehold Property". The purchase price was $825,000.00 with a down payment of $45,725.00. The balance of $779,275.00, together with interest at 8¾% per annum, was to be paid as follows: $36,783.36, representing payment for the first six months was to be prepaid, with monthly payments of $6,130.56 from and after November 1, 1978. Debtor was additionally required to pay real property taxes, lease rent, insurance premiums, improvement assessments pro rata monthly in advance. The maturity date of the Agreement was March 14, 1983.

Debtor made regular payments until September 1979. Thereafter, because of debtor's non-payment, Bank filed suit in February 1980 to cancel the Agreement. In July of 1980, Debtor paid the arrearages and brought the Agreement current through June 1980. Bank then dismissed the action to cancel the Agreement.

After the July 1980 payment, Debtor again defaulted in her payments. As a result, on December 9, 1980, the Bank sent Debtor a Notice of Cancellation of the Agreement and on December 16, 1980, an affidavit of the cancellation was filed in the Bureau of Conveyances of the State of Hawaii.

On December 12, 1980, the Bank filed a complaint in the Circuit Court of the First Circuit (Civil No. 63797) to cancel the Agreement and retain all payments made by Debtor or, in the alternative, to foreclose Debtor's interest therein.

On May 11, 1981, the Circuit Court of the First Circuit entered its order in Civil No. 63797 granting the Bank's motion for summary judgment. In the order, the Court did not cancel the Agreement but treated the Bank's actions as an acceleration of all amounts due and owing under the Agreement and decreed foreclosure of the Property if Debtor failed to pay such amounts within 45 days from May 1, 1981.

Debtor failed to pay the amounts due within the time specified and a Decree of Foreclosure was entered by the Circuit Court of the First Circuit on July 10, 1981; Danny Graham and Patrick Lum were appointed as co-commissioners to sell the property.

On August 4, 1981, Debtor filed a notice of appeal from the Decree of Foreclosure.

On December 3, 1982, the Intermediate Court of Appeals entered its judgment on appeal affirming the entry by the Circuit Court on the Decree of Foreclosure on July 10, 1981.

On December 21, 1982, the Supreme Court of Hawaii denied Debtor's application for Writ of Certiorari.

On January 5, 1983, the Intermediate Court of Appeals filed a notice of judgment on appeal.

On January 18, 1983, the Circuit Court of the First Circuit entered its order in Civil No. 63797 reappointing Danny Graham and Patrick Lum as co-commissioners of the Court and authorizing and directing them to sell the property as set forth in the Decree of Foreclosure entered therein on July 10, 1981.

A foreclosure sale of the property was scheduled for March 21, 1983; however, it was stayed by debtor's commencement of these proceedings on February 18, 1983.

Debtor has remained in possession of the property, has failed to assume or reject the Agreement and has failed to make any payments to Bank on the Agreement since May 1981.

Debtor has improved the leasehold property since purchasing it in 1978. Debtor is now attempting to sell the property at $4,500,000.00 with a co-listor.

At the hearing on June 10, 1983, it was stipulated for the purpose of this hearing only, that if Robert Hastings, M.A.I., Member, Appraiser's Institute, were to testify, he would testify that, if the leasehold property were to be sold at foreclosure within a period of four (4) months, it would sell for approximately $1,760,000 and that if it were sold within a period of one (1) year, it would sell for approximately $2,300,000.00.

Also at this hearing, Mr. Jack Corteway, President of Bank of Honolulu, testified that at the time of execution of the Agreement on March 14, 1978, Bank was a National Bank with a limitation on any one loan of 10% of surplus. In 1978, Bank had a surplus of $2,200,000.00, and its legal lending limit was $220,000.00. He further testified that the Bank is now a State Bank regulated by state law limiting any loan to 20% of its capital surplus. Presently Bank has a net surplus of $3.2 Million and is authorized to lend up to $640,000 on any one loan. Any loan exceeding the authorized limit must be cleared within a short period or the Bank may be placed under receivership.

The Agreement, which was for five years, by its terms has matured. Thus the approximate amount owing today from Debtor to Bank is:

| | |
|---|---|
| Principal | $755,711.00 |
| Interest at 8¾% | 137,000.00 |
| Costs & Expenses | 50,000.00 |
| | $942,711.00 |

Though the floating rate was 13½% at the time of the hearing, Bank has been receiving 14–15% interest on its loans. Thus, if Bank had the $942,711.00 to lend, it would be able to earn approximately $150,000 pre-tax.

## QUESTIONS BEFORE THE COURT

The parties had placed three questions before the Court:

1. Is the property in question property of the estate and, if it is deemed to be, are there grounds for relief from the stay?

2. Is this a proper action for the alternative request that debtor be required to assume or reject the executory contract?

3. Is the agreement in question an executory contract, and as such subject to § 365, or is the agreement in essence a mortgage and as such not subject to § 365?

Further, Debtor contends in her Motion for Judgment on the Pleadings, that the Complaint to Modify Stay makes no allegations with respect to adequate protection, Debtor's equity or necessity for effective reorganization and as such provides no basis under § 362 upon which relief from the automatic stay can be granted.

## CONCLUSIONS OF LAW

I. Is the property in question property of the estate and, if it is deemed to be, are there grounds for relief from the stay?

■ 1. Under § 362(d), Bank need not allege lack of equity, no possibility of an effective reorganization or lack of adequate protection in order to gain relief from the stay. The Court can grant relief from the stay "for cause," including but not limited to the above claims. Any "cause" convincing the Court that the stay should be modified is adequate.

■ 2. This Court has previously ruled that, even though a Decree of Foreclosure is issued by the State Circuit Court and commissioners appointed to sell a property, if said property is not sold prior to the filing of Petition for relief, the Bankruptcy Court has jurisdiction over said property. *In re Kealia Beach Village, Inc.,* 18 B.R. 133 (Bkrtcy.D.Haw.1982). The property in question not yet having been sold in foreclosure, the Court thus holds that the property is within Debtor's estate and as such the Court has jurisdiction to hear requests for relief from the automatic stay.

■ 3. Regarding the Complaint for Relief from Stay, the question of Debtor's equity in the subject property is dispositive.

The total amount owing by Debtor to Bank today is approximately $943,000.00. Since there are no liens/mortgages on said property and given the testimony regarding potential sales prices, this Court finds Debtor has an equity of approximately $817,000.00 in the property. The Court thus finds that said equity constitutes adequate protection to Bank and denies the Complaint to Modify Stay.

II. Is this a proper action for the alternative request that debtor be required to assume or reject the executory contract?

■ 4. As to the procedural objection by Debtor to creditor's alternative request, there is nothing in the Code which prohibits the expeditious hearing of a request to require Debtor to assume or reject an executory contract. The Court thus finds the objection that the request should not be an alternative to the Complaint to Modify Stay to be without merit.

III. Is the Agreement of Sale of the Leasehold Property an executory contract or should it be treated as a mortgage?

5. There is no definition of the phrase "executory contract" in the Bankruptcy Code. However, the Ninth Circuit Court of Appeals has succinctly defined "executory contract" in *In re Alexander,* 670 F.2d 885 (1982). There, the Court stated:

> Nowhere does the Code define the phrase "executory contract." However, Notes of Committee on the Judiciary, Senate Report No. 95–989, U.S.Code Cong. & Admin.News 1978, pp. 5787, 5844, observes with regard to 11 U.S.C. § 365 (Executory Contracts and Unexpired Leases):
>
> > Though there is no precise definition of what contracts are executory, it generally includes contract on which performance remains due to some extent on both sides.

This definition is similar to an often cited definition of the meaning of executory contract under the former Bankruptcy Act:

> [A] contract under which the obligation of both the bankrupt and the other

party to the contract are so far unperformed that the failure of either to complete the performance would constitute a material breach excusing the performance of the other.

Countryman, Executory contracts in Bankruptcy: Part I, 57 Minn.L.Rev. 439, 460 (1973), (citations omitted).

6. The Courts of Hawaii have similarly defined the term "executory contract". In *Jenkins v. Wise*, 58 Haw. 592, 574 P.2d 1337 (1978), the Supreme Court of Hawaii stated:

*An agreement of sale in this jurisdiction has become a common and established device utilized in the sale and purchase of real property. It is an executory contract which binds the vendor to sell and the vendee to buy realty which constitutes the subject matter of the transaction. State Savings & Loan v. Kauaian Development, 50 Haw. 540, 445 P.2d 109 (1968). It is often the only means by which low income purchasers are able to buy land, for the agreement of sale transaction enables them, initially at least, to bypass the substantial down payment requirements based on loan-to-value ratios imposed upon lending institutions for conventional loans by state and federal regulations. The vendor, on the other hand, can establish his own ratios and thus is able to effect an enlargement of the land and housing market towards which his sales efforts are directed.* (Emphasis added.)

And, in *Dang v. Mt. View Estates,* 1 Haw.App. 539, 621 P.2d 988 (1981), and Intermediate Appellate Court rejected the suggestion that agreements of sale and mortgages were interchangeable. It stated:

Appellants contend that an agreement of sale should be treated as a security lien subject to foreclosure sale remedies rather than straight forfeiture.

*Although there are some similarities between agreements of sale and mortgages, purchasers under agreements of sale are not entitled to be treated as if they were mortgagors. Jenkins v. Wise, 58 Haw.*

592, 574 P.2d 1337 (1978) (Emphasis added.)

Id. at 542–543, 621 P.2d 988.

 In light of the above definitions, the Court finds the Agreement of Sale to be an executory contract. The Agreement remains substantially unperformed by Bank and Debtor; it remains for Debtor to pay the remainder of the purchase price, plus other costs, and for Bank to convey title to Debtor. In addition, under the Agreement of Sale, the fee owner of the property requires payments of utilities used by Debtor be made through Bank. A mortgage does not contain such a provision requiring payments of utilities through the mortgagee.

Debtor contends however that under *Jenkins v. Wise, supra,* where the vendee under an Agreement of Sale has sufficient equity, the Court will not allow forfeiture of such equity but will, upon the default of vendee, require the vendor to sell the property. Debtor further contends that, in the instant case, because the State Circuit Court denied the cancellation of the Agreement and appointed co-commissioners to sell the leasehold interest, the State Circuit is treating the Agreement as though it were a mortgage.

By this argument, Debtor is contending that agreements of sale are to be treated differently based on whether vendee can establish equity which would be forfeited upon cancellation. Under Debtor's argument, agreements of sale in which there would be no forfeiture upon cancellation should properly be treated as executory contracts. However, Debtor claims that, if there would be forfeiture upon cancellation, the agreement should be treated as a mortgage. Debtor is in essence claiming that a Debtor-vendee may rush to the Bankruptcy Court and request the Court to change an ugly duckling (agreement of sale) into a beautiful swan (mortgage). However, this Court does not have a fairy godmother's magic wand. It cannot perform such miracles. Both the Ninth Circuit Court of Appeals and the Supreme Court of Hawaii have ruled that an Agreement of sale is an

executory contract and this Court declines to rule otherwise.

The Debtor has cited *In the Matter of Cox,* 28 B.R. 588 (Bkrtcy.D.Idaho 1983) as support for her argument that the Agreement of Sale should be treated as a mortgage and not an executory contract. The *Cox* case deals with an executed rather than an executory contract and is therefore readily distinguishable from the case at bar. The vendor in *Cox* had executed the deed and delivered it into escrow, leaving only the vendee with remaining obligations under the sales contract. In the present case, obligations remain unperformed by each party, with vendor yet to execute the deed and pay the utilities and vendee yet to pay the purchase price.

Furthermore, if the Court in this case were to treat the agreement in question as a mortgage rather than as an executory contract, its interpretation would run counter to the intent of Bank and would by this interpretation place Bank in the untenable position of having lent to Debtor in excess of the lending limit established by both the Federal and State regulations. In effect, the Court would be sanctioning violations of regulations established to protect the Bank and the public.

This Court does not believe that it was the intent of Congress to allow this Court to interpret the Agreement in question so as to hold that the Bank was in violation of federal and state regulations and in danger of being placed in receivership.

Having determined that the Agreement of Sale is an executory contract and not a mortgage, the next issue before this Court is a determination of the date by which Debtor is to assume the agreement of sale. Section 365(d)(2) provides:

"(2) In a case under chapter 9, 11, or 13 of this title, the trustee may assume or reject an executory contract or unexpired lease of the debtor at any time before the confirmation of a plan, but the court, on request of any party to such contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract or lease."

Section 1123(b)(2) provides:

(b) Subject to subsection (a) of this section, a plan may—

(2) subject to section 365 of this title, provide for the assumption or rejection of any executory contract or unexpired lease of the debtor not previously rejected under section 365 of this title;

■ The sections above quoted are clear and unambiguous. Debtor has until the confirmation of a plan to reject or assume an executory contract, unless the Court otherwise provides.

■ Under the Code, the Debtor in possession is allowed a reasonable time to decide whether to assume or reject. *Theatre Holding Corp. v. Mauro,* 681 F.2d 102 (2 Cir.1982). What constitutes a reasonable time to assume or reject an executory contract is left to the court's discretion in light of the circumstances of each case. However, upon assumption of an executory contract, the debtor must comply with the provisions of Section 365(b)(1)(A), (B), (C). *Theatre Holding Corp. v. Mauro,* supra, *In re New England Carpet Company,* 18 B.R. 514, 8 BCD 1121 (Bkrtcy.1982).

■ In the instant case, the Agreement of Sale has matured by its own terms and there is presently owing to Bank of Honolulu by Debtor a sum exceeding $940,000.00. Though the property may be sold for approximately $1,760,000.00 within a period of 4 months and approximately $2,300,000.00 within a period of one year, Bank of Honolulu is losing approximately $150,000 per year because it is unable to invest the $940,000.00 owing to it. Debtor has the property listed at $4,500,000.00. It would be sheer speculation for the Court to determine whether if ever this price could be realized.

If the property were sold for $1,760,000.00, there would be no forfeiture on the part of Debtor. Examination of Debtor's Schedule of Assets and Liabilities filed herein on March 22, 1983 reveals that a foreclosure price which netted Debtor $800,000. would be more than enough to pay in

full all unsecured creditors (see Schedule A–3). However, Debtor is seeking to reap a substantial profit through the umbrella of the Bankruptcy Court by holding the property until the economy improves.

Courts of equity and of law are on guard against forfeiture on the part of Debtor, but not to ensure that Debtor reap a fortune at creditor's expense! Such actions by Debtor should not be sanctioned by the Bankruptcy Court.

Since there would be no forfeiture if the property were sold for $1.7 million and since there was testimony that the property could be sold for said sum if exposed to the market for at least four months, the Court finds that it is reasonable to require that Debtor assume or reject the Agreement of Sale within four months from the date of this Order, whether through a plan or otherwise.

Upon assumption of the Agreement of Sale, Debtor must comply with Section 365(b)(1), which provides:

"If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—

"(A) cures, or provides adequate assurance that the trustee will promptly cure, such default;

"(B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

"(C) provides adequate assurance of future performance under such contract or lease."

▮ Debtor's Plan of Reorganization filed by Debtor on June 20, 1983, proposes that Bank of Honolulu be paid upon sale of the property in cash or property in an amount equal to the value of its claim as of the effective date of the Plan, based on a discount factor at 2% above the Bank of Hawaii base rate at confirmation. The Plan provides for sale of the Property no later than 18 months after the effective date of the plan. Given the loss of income to creditor, the Court finds this is too long to wait.

Since the Petition for relief was filed on February 18, 1983 and a sum in excess of $940,000.00 is now due, the Court directs that Debtor must assume or reject the Agreement of Sale within 120 days from the date of this Order. If Debtor assumes the Agreement of Sale, she must comply with the provisions of § 365(b)(1). In this case, a prompt cure of the arrearage means payment in full upon assumption of the Agreement of sale. The time above set is adequate to prevent a forfeiture on the part of Debtor and is reasonable under the facts of this case.

The Court having thus held that the Agreement of Sale in question is an executory Contract and that four months from entry of this order is a reasonable time in which to allow Debtor to assume or reject said contract,

IT IS HEREBY ORDERED that by October 31, 1983, Debtor is to assume the executory contract in question, in doing so comply with section 365(b)(1)(A), (B), (C), or the contract will be deemed rejected.