**In re Robert J. BUCHERT, Debtor.**

**Bankruptcy No. 83 B 13819.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

Jan. 26, 1987.

817

Lord, Bissell & Brook, for Buchert.

Richard Prendergast, Washington, D.C., and Victoria Crosley, Dept. of Justice, for the Government.

## MEMORANDUM OPINION AND ORDER

JOHN D. SCHWARTZ, Bankruptcy Judge.

This matter is before the Court on the amended motion of the debtor "For Determination of Debtor's Tax Liability and For Order Directing Clerk of the Court of McHenry County to Turnover Proceeds of the Debtor." The United States of America (Government) has filed a response in opposition thereto and the matter has been fully briefed. For the reasons set forth below, the relief request by the debtor's motion is granted as modified by this order.

1. The Government contends that there are factual issues in dispute. However, after allowing the Government extended time for discovery, it has yet to raise any relevant questions of fact which would prevent the Court from reaching a determination on the merits of this motion.

2. Many of the facts contained herein are taken from this Court's Order entered May 13, 1986 in which this Court denied, without prejudice, the debtor's first motion in order to give the Circuit Court in McHenry County an opportunity to here the matter. The Circuit Court passed and

The debtor's motion requests the Court to determine the validity of certain tax liens filed by the Internal Revenue Service which allegedly attached to certain real property at the time owned by the debtor. The Government contends that the issue of the validity of its tax liens was determined in foreclosure proceedings on the real property heard by the Circuit Court of the 19th Judicial Circuit, McHenry County, Illinois and that the doctrines of *res judicata* and full faith and credit preclude this Court from determining the issue.

The facts are not in dispute.[1] On February 12, 1975, the debtor sold by contract sale ("Contract") the property in question commonly known as The Hunter Country Club ("Property") to John Lopman.[2] The debtor retained title to the Property under the contract sale. Lopman's interest in the contract sale was subsequently assigned to Kalo Enterprises, Inc. (Kalo).

On February 9, 1982, Kalo filed a petition for relief under Chapter 11 of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*). On July 8, 1983, Buchert commenced his own Chapter 11 Bankruptcy proceedings. On January 25, 1984, Kalo's Chapter 11 was converted to a Chapter 7 liquidation proceeding. Kalo was in default under the Contract and at the time of conversion, Kalo owed Buchert approximately $800,000 under the Contract.

The Chapter 7 Trustee in the Kalo bankruptcy proceeding took no action to assume or reject the Contract, and as an executory contract under § 365 of the Bankruptcy Code (11 U.S.C. § 365), it was rejected. *In re Abernathy*, 10 B.R. 418 (Bankr.M.D.Ala. 1981.)

the matter is now with this Court for resolution of the issues raised by the debtor's motion. *Offlenlock v. Katzenberg*, 81 Ch 61, Circuit Court of the 19th Judicial Circuit, McHenry County, Illinois, Order Dated July 1, 1986. In order to clear up any question of whether the facts in this Court's May 13, 1986 were findings of fact or mere *dicta,* they are repeated here. This Memorandum Opinion and Order represents this Courts Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 7052.

On August 15, 1984, Buchert and Kalo agreed to a modification of the § 362 automatic stay to allow the mortgagee to foreclose the Property. On November 30, 1984, a judicial sale of the Property was held by the Circuit Court of the 19th Judicial District, McHenry County, Illinois. (No. 81 CH 61; Judicial Sale File No. 000436). Nathaniel Gray, as agent, purchased the Property for $1,000,000 and the Circuit Court entered an order on December 14, 1984 approving the sale. In the state court foreclosure action, a default judgment had been entered against the debtor, a named defendant in that action, on or about July 21, 1981.

There remains from the proceeds of the sale after payment to lien claimants the amount of $182,921.17. This amount is being held in the registry account of the Clerk of Court of the Circuit Court of the 19th Judicial Circuit, McHenry County, Illinois. The Government asserts that the tax liens for taxes which accrued while Kalo was in possession of the Property under the Contract have attached to the Property itself and not just to Kalo's interest in the Property. Additionally, the Government asserts that this matter has already been resolved in its favor by the McHenry County Circuit Court in its December 14, 1984 Order and this Court is barred on *res judicata* and full faith and credit principles from disturbing the Circuit Court's Order. Therefore, the Government contends it is entitled to the proceeds of the sale to the extend of its tax liens and statutory additions.

This Court is spared the arduous analysis of the Government's *res judicata* and full faith and credit arguments. Whether this Court may determine the merits of the Government's claim against the proceeds of the sale is not controlled by principles of *res judicata* and full faith and credit, but is instead governed by Section 505 of the Bankruptcy Code which provides in relevant part:

(a)(1) Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

(2) The court may not so determine—

(A) the amount or legality of a tax, fine, penalty, or addition to tax if such amount or legality was contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction before the commencement of the case under this title; or....

11 U.S.C. § 505(a). This section authorizes a bankruptcy court to redetermine a tax previously determined if such prior determination was not contested. At the time the Circuit Court's order of December 14, 1984 was entered, the debtor was no longer an active litigant in the case, a default judgment having been entered against him some three years earlier.

■ The question then becomes whether a default judgment entered in a Court of competent jurisdiction can be considered a contested matter. The answer is no. As stated by one court:

Judicial interpretation of the predecessor of § 505 indicates that Congress did not consider a default proceeding to be a contest which would prevent the bankruptcy court from determining the amount or validity of a tax. Section 2(a)(2A) of the Bankruptcy Act of 1898, former 11 U.S.C. § 11(a)(2A), established a test for bankruptcy court power identical to that established by § 505(a), at least with respect to unpaid taxes. Courts, in determining the meaning of the phrase "contested before and adjudicated by" in section 2(a)(2A), found the debtor's appearance and actual litigation before a competent tribunal necessary to preclude bankruptcy court determination of the issue. *In re Century Vault Company, Inc.,* 416 F.2d 1035, 1040–41 (3rd Cir.1969); *City of Amarillo v. Eakens,* 399 F.2d 541, 543–44 (5th Cir.1968), cert. denied 393 U.S. 1051, 89 S.Ct. 688, 21 L.Ed.2d 692 (1969). Courts and commen-

tators have recognized as the policy behind this rule an intent to protect the creditors of a defaulting debtor. General creditors, who would have had no opportunity to be heard in the default proceeding, would often be the parties in fact harmed by a debtor's inability to discharge the tax obligations. These creditors should not be bound by the inaction of a debtor who, as long as the value of his non-exempt property exceeded the amount of the tax obligation, likely had little actual stake in the outcome. *See* 1 Collier on Bankruptcy § 2.22A at 220 (14th Ed.1976); *In re Century Vault Company, Inc., supra,* 416 F.2d at 1041. *In re Tapp,* 16 B.R. 315, 318–19, (Bankr.D. Alaska 1981) (footnotes omitted); *See, In re Northwest Beverage, Inc.,* 46 B.R. 631 (Bankr.N.D.Ill.1985); *In Bruce W. Brooks General Contractor, Inc.,* 27 B.R. 9 (Bankr.D.Or.1982); 3 Collier on Bankruptcy, ¶ 505.04 (15th Ed.1984). Section 505(a)(2)(A) permits the relitigation in bankruptcy court of uncontested tax determinations.

The government's full faith and credit argument is inapplicable in this case. Full faith and credit, as applied to the federal courts, is a statutory doctrine derived from 28 U.S.C. § 1738. "Section 1738 requires that federal courts give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged." *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 466, 102 S.Ct. 1883, 1889, 72 L.Ed.2d 262 (1982). Even if the Circuit Court order with respect to the tax lien were to be considered by this court as the type of judgment entitled to such treatment, it is a well settled that Congress can modify or carve out exceptions to laws which it has passed. Section 505(a)(2)(A) appears on its face to be

such an exception. In this case, when you have two apparently conflicting statutes, the latter, 11 U.S.C. § 505, governs to the extent necessary to allow for the operation of that statute. *Silver v. New York Stock Exchange,* 373 U.S. 341, 357, 83 S.Ct. 1246, 1257, 10 L.Ed.2d 389 (1963). Similarly, the court made doctrine of *res judicata* must give way to statutory law.

Having concluded that this Court has authority to hear and determine this matter, it must address the question of whether the Government's tax liens have attached to the proceeds of the sale. The parties agree that the Government has a valid and enforceable tax lien as to the 1971 taxes. These taxes accrued while the debtor was operating the Property and before any contract sale was entered into. They should be paid out of the proceeds of the sale.

The remaining taxes involve witholding taxes assessed against Kalo in 1979 and 1980 and for which federal tax liens were recorded against the Property in 1979 and 1980. At the time the tax liens were recorded, Kalo was the contract buyer of the Property and operated the country club while the debtor retained title to the Property.

The initial question the Court must resolve is whether a contract for the purchase of real estate is an executory contract within the context of Section 365 of the Bankruptcy Code. The legislative history of § 365 provides:

> Though there is no precise definition of what contracts are executory it generally includes contracts on which performance remains due to some extent on both sides. H.R.Rep. No. 595, 95th Cong., 1st Sess. 347 (1977) and S.Rep. No. 989, 95th Cong., 2d Sess. 58, reprinted in 1978 U.S. Code and Cong. & Admin.News 5787, 5844, 5963, 6303.[3]

---

**3.** Most bankruptcy courts view this legislative history as adopting the definition of an executory contract as put forth by Professor Vern Countryman in a 1973 law review article. Professor Countryman defined an executory contract as "a contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either party to complete performance would constitute a material breach excusing performance of the other." Countryman, Executory Contracts in Bankruptcy, Part I, 57 Minn.L.Rev. 459, 460 (1973).

Authorities are split on whether land sales contracts are executory contracts. Some courts have held that land sales contracts are nothing more than security devices similar to mortgages. *In re Bertelsen*, 65 B.R. 654 (Bankr.C.D.Ill.1986); *In re Thurmond*, 46 B.R. 723 (D.Or.1985); *In re Adolphsen*, 38 B.R. 776 (Bankr.D.Minn.) aff'd 38 B.R. 780 (D.Minn.1983); and as such do not fall within the ambit of § 365. The cases cited *supra* and others holding that land sales contracts are not executory contracts rely significantly on the analysis of the issue by the bankruptcy court in *In re Booth*, 19 B.R. 53 (Bankr.D.Utah 1982).

In *Booth*, the court struck a balance between the rights of the contract seller and the rights of the debtor purchaser [4] and the debtor's creditors and reasoned that the overall goals and policies of the Bankruptcy Code are better served by treating a land sales contract as a form of a security device not subject to assumption or rejection under § 365.

This Court disagrees with that analysis for two reasons. First, a land sales contract fits in with the traditional definition of an executory contract as performance is still due by both parties to the contract. *In re Alexander*, 670 F.2d 885 (9th Cir.1982); *In re Aslan*, 65 B.R. 826 (Bankr.C.D.Cal. 1986); *Shaw v. Dawson*, 48 B.R. 857 (D.N. M.1985); *In re Speck*, 50 B.R. 307 (Bankr. S.D.), aff'd *Speck v. First National Bank of Sioux Falls*, 62 B.R. 61 (D.S.D.1985); *In re Anderson*, 36 B.R. 120 (Bankr.Haw. 1983); *See* Ginsberg, Bankruptcy, ¶ 7002 (1985). Under a typical land sales contract, the seller must transfer title to the property to the purchase upon receiving the amounts called for in the contract.[5] This fits the traditional definition of an executory contract as performance is due by both parties to the contract, the non-performance of which by either side would

excuse the other from further performance. *In re Cochise College Park, Inc.*, 703 F.2d 1339 (9th Cir.1983).

■ Second, the determination of the status of the contract as an executory contract or a security device requires the court to determine the nature of the relationship between the contract seller and the contract purchaser. Absent a clearly stated federal interest, the relationship between the parties is to be determined by the governing state law. *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); *In re Madeline Marie Nursing Homes*, 694 F.2d 433 (6th Cir. 1982); *In re Britton*, 43 B.R. 605 (Bankr.E. D.Mich.1984); *In re Patch Graphics*, 32 B.R. 373 (Bankr.W.D.Wis.1983). Although Congress has expressed an overriding federal interest in certain executory contracts, i.e. collective bargaining agreements and real property sales contracts when the debtor is the seller, there is no compelling federal interest to define the relationship of the parties to a real property sales contracts when the debtor is the contract purchaser other than as that relationship is defined under controlling state law.

Therefore, this Court is of the opinion that Illinois law (the contract was entered into in Illinois and the subject matter of the contract is real property located in Illinois) governs in determining whether the contract in issue *sub judice* is an executory contract for purposes of § 365. *But see In re Bertelsen*, 65 B.R. 654, 657, n. 2 (Bankr. C.D.Ill.1986).

■ Under Illinois law, contracts for the purchase of real property or, as they are sometimes called, articles of agreement, are not considered to be a security instrument, mortgage or trust deed, but constitutes an executory contract. *8930 South Harlem, Ltd. v. Moore*, 77 Ill.2d 212, 219,

---

**4.** § 365(i) and (j) deal with the situation where the debtor is the seller of real property under a contract. In those sections, the Bankruptcy Code specifically refers to an agreement for the sale of real property as an executory contract. 11 U.S.C. § 365(i) and (j).

**5.** This is the situation in the case *sub judice*. It might be a different situation where the seller has already transferred the title to an escrowee who holds the title until the purchase price is paid. In that case, it might be said that the seller's performance is complete. *In re Rehbein*, 60 B.R. 436 (9th Cir.BAP 1986).

32 Ill.Dec. 888, 396 N.E.2d 1 (1979); *In re Estate of Frayser*, 401 Ill. 364, 373, 82 N.E.2d 633 (1948).[6] As an executory contract, the Contract is governed by 11 U.S.C. § 365.

The trustee in Kalo neither assumed nor rejected the Contract within the time required by § 365. Therefore, the contract was rejected by operation of law, 11 U.S.C. § 365(d)(1), and Kalo's interest therein terminated. With the foreclosure of the mortgage in the state court proceedings a *fiat accompli*, the Property can no longer be considered subject to the Contract.

If the Contract falls, all rights and claims arising by reason of the contract also fall. For example, a lien for taxes incurred by the purchaser under a contract falls when the purchaser no longer has any rights under that contract. If the lien was against the purchaser, it can rise to no greater height than the purchaser's rights.

It is the Government's position that its tax lien against the Property, which arises out of a tax claim against Kalo, the contract purchaser, is a lien against the Property which survives the termination of Kalo's interest in that Property. Since Kalo's interest was a contract right, all interest of Kalo and those claiming through it expire upon the termination of the contract. Neither the Government nor any other entity can have a greater right against the Property than the right of Kalo, the party against whom the claim is made.

Of course, a contract purchaser cannot rid the property of a lien interest by conveying out his interest to a third party, nor could the contract purchaser fraudulently forgo a right to property to avoid a tax lien. There is no question in this case that the purchaser now has no interest in the Property, and there is no question of fraud

with respect to the termination of that interest.

Without Kalo's bankruptcy, the purchaser's interest in the contract would have to have been terminated in accordance with the provisions of Illinois law. Ill.Rev.Stat. ch. 110, ¶ 9–110, see n. 6 *supra*. However, since Kalo did file bankruptcy, its interest in the property was terminated by the rejection of the Contract pursuant to § 365. Once the contract purchaser's interest terminates, any claim arising under the purchase contract will also fall. The Governments rights in the Property can not be increased by the termination of Kalo's rights in the Property.

What the Government is attempting to do here is to collect unpaid withholding taxes due from Kalo by attaching the property of a third-party. The Government, realizing that it can not collect its taxes from the taxpayer who owes them, now attempts to turn around and collect the taxes by attaching the interest in that property of a non-liable third-party. The law does not allow this.

NOW, THEREFORE, IT IS ORDERED THAT:

1.) The Clerk of the Circuit Court of the 19th Judicial District, McHenry, Illinois is to forthwith turn over to the law firm of Lord, Bissell and Brook the funds it is holding pursuant to Case No. 81 Ch. 61; Judicial Sale File No. 000436 styled *Offlenlock v. Katzenberg et. al* plus any accrued interest attributable to those funds.

2.) Upon receipt of the funds, Lord, Bissell and Brook is directed to pay the United States of America funds sufficient to satisfy the 940 tax for the taxable period ending December 31, 1971, assessed on April 4, 1977, recorded on October 5, 1977, Document No. 710618 in the assessment

---

6. Additionally, Illinois statutory law provides specifically for the recovery of lands subject to a land sales contract by the seller, vendor. *See* Ill.Rev.Stat. ch. 110, ¶ 9–110. That section does not treat a land sales contract as a security device, but treats it as an executory contract which has been breached. The only additional right it gives a contract purchaser is a brief period of time to cure defaults. It does not grant the purchaser any of the procedural safeguards and other rights as found in Ill.Rev.Stat. ch. 110, ¶ 15–101 *et seq.* dealing with mortgage foreclosure. The Court notes that there is no mention in the *Bertelsen* case of the manner of terminating articles of agreement under Illinois law.

amount of $2,442.25 plus any accrued interest until payment.

3.) Lord, Bissell and Brook is directed to place the remaining funds in a segregated interested bearing trust account for the benefit of the estate pending further order of the Court.