**Joseph W. SHAW and Dagmar Shaw, Debtors-in-Possession/Appellants,**

v.

**Sam F. DAWSON, Appellee.**

**In re Joseph W. SHAW, SS # 443–42–5664, and Dagmar R. Shaw, SS # 444–52–2840, d/b/a Shaw & Daughter Land & Cattle Co., f/d/b/a Dinetah, Ltd., and Century 21 Shaw & Shaw, Ltd., limited partnerships, Debtors.**

**Civ. No. 84–1634 HB.**
**Bankruptcy No. 11–83–00750 MA.**

United States District Court,
D. New Mexico.

April 19, 1985.

Daniel Cleavinger, Espanola, N.M., for appellants.

James C. Hall, Albuquerque, N.M., for appellee.

## MEMORANDUM OPINION AND ORDER

BRATTON, Chief Judge.

This matter comes on upon an appeal from two orders entered by the United States Bankruptcy Court for the District of New Mexico. Having considered the matter, the memoranda and exhibits submitted by the parties, and the record, the Court finds that the decision of the Bankruptcy Court should be affirmed.

The question presented in this appeal is whether the Bankruptcy Court was correct in holding that a real estate contract, in which the debtors are the purchasers of the land, is an executory contract subject to the provisions of 11 U.S.C. § 365. The Shaws, appellants herein, are debtors-in-possession in this proceeding under Chapter 11 of the Bankruptcy Code. In May, 1980, the Shaws assumed a contract to purchase from Sam Dawson, appellee herein, a tract of land of some 800 acres near Cebolla, New Mexico. Dawson originally made a contract to sell the land to a Mr. and Mrs. Garber, in November of 1979. The contract was for a purchase price of $160,000, with $10,000 due on the date the contract was executed, $10,000 due on or before April 15, 1980, and the principal balance of $140,000, plus interest at nine percent, to be paid in monthly payments of $1,175. In May, 1980, the Garbers assigned the real estate contract to the Shaws. The Garbers apparently had paid Dawson the first $10,000 of the down payment. At the time they were assigned the contract, the Shaws paid Dawson an additional $5,200 in cash toward the second $10,000 portion of the down payment, and canceled a debt of $4,800 that Dawson allegedly owed to them.

The Shaws allege that they made 37 payments under the contract in the amount of $1,175 each. They apparently became financially unable to meet the monthly payment due June 15, 1983, and have made no subsequent payments. Judging that they were in default under the contract, Dawson sent a "30 day notice" to the Shaws. The contract provides that if a default occurs, and is not cured within thirty days after the seller notifies the defaulting buyer, the seller may terminate the contract and retain, as rent, all sums paid by the buyer up to that time. This contract, including the thirty day notice and forfeiture provisions, is apparently the standard form for a real estate contract in New Mexico.

The Shaws filed a petition for relief under Chapter 11 of the Bankruptcy Code on June 22, 1983, before the thirty day "no-

tice" period had run. The filing of the petition triggered the automatic stay provision of the Bankruptcy Code, foreclosing for the time being any right of Dawson to effect a forfeiture pursuant to the contract. 11 U.S.C. § 362. On February 21, 1984, Dawson filed a motion for relief from the automatic stay, to allow him to terminate the contract and reacquire the land from the Shaws. Subsequently, the Shaws filed a disclosure statement and plan of reorganization which contemplated that the land would remain in possession of the Shaws, to be developed, subdivided, and sold in order to complete payment due to Dawson under the contract. The Shaws' business, the subject of this Chapter 11 proceeding, is real estate development. The land at issue was being purchased by the Shaws with the intention that it be so developed.

The Bankruptcy Court denied approval of the disclosure statement on June 16, 1984, and, on October 15, 1984, it denied approval of the debtors' Amended Disclosure Statement. Prior to the second denial, Dawson's motion for relief from the automatic stay came on for a hearing. The court ruled, in its order entered August 30, 1984, that the real estate contract between Dawson and the Shaws is an executory contract, and that the debtors-in-possession must either assume or reject the contract not later than November 1, 1984. The Shaws filed a motion to vacate the court's August 30th order, which the court denied on October 29, 1984. The Shaws then brought this appeal from the Bankruptcy Court's August 30th and October 29th orders. They contend that both orders, which held in essence that the real estate contract at issue is an executory contract which must be assumed or rejected pursuant to 11 U.S.C. § 365, are in error.

11 U.S.C. § 365(a) provides that the trustee (or the debtor-in-possession, who holds the power of a trustee) may assume or reject any executory contract of the debtor. Subsection (b) provides that if there has been a default in the contract by the debtor, the trustee, at the time of assumption, must cure the default, compensate the other party for any loss resulting from the default, and provide adequate assurance of future performance. In the case at bar, the Shaws were not financially able to cure the default nor to provide adequate assurance of future performance at the time set by the court for them either to affirm or to reject the contract. Therefore, the court's order had the practical effect of forcing them to reject the contract and lose the land.

The court was not simply acting in a discretionary manner in ordering the debtors to assume or reject the contract. Subsection (d)(2) provides that an executory contract should be assumed or rejected at least by the time of confirmation of a plan of reorganization, and at a specified time before confirmation on the request of the other party to the contract. The ultimate consequence of the various provisions of section 365 is that if this contract is deemed to be an executory contract, within the scope of section 365, forfeiture of the land by the Shaws appears to be unavoidable.

"Executory contract" is not defined in section 365, nor in any other section of the Bankruptcy Code. The legislative history of section 365 indicates, however, that Congress intended the term to be defined as a contract "on which performance remains due to some extent on both sides." S.Rep.No. 989, 95th Cong., 2d Sess. 58, *reprinted in* 1978 U.S.Code Cong., & Ad. News 5787, 5844; H.R. Rep. No. 595, 95th Cong., 2d Sess. 347, *reprinted at* 1978 U.S. Code Cong. & Ad.News 5787, 5963, 6303. This definition essentially follows the definition of an executory contract formulated by Professor Countryman in his seminal article on the topic. Countryman, *Executory Contracts in Bankruptcy: Part I,* 57 Minn.L.Rev. 439 (1973). According to Countryman, an executory contract for purposes of the bankruptcy statutes is "a contract under which the obligations of both the bankrupt and the other party are so far unperformed that failure of either to complete performance would constitute a material breach excusing the performance of the other." *Id.* at 460.

A New Mexico real estate contract, of the kind at issue in this case, appears to fall squarely within the Countryman definition of an executory contract, within the definition contemplated by Congress. The obligation of the buyer to pay the purchase price according to the terms of the contract, and the obligation of the seller to deliver title to the buyer when full payment has been made, are both unperformed. Failure of either party to complete performance would constitute a material breach of the contract.

The Shaws rely on *In re Booth,* 19 B.R. 53 (Bankr.D.Utah 1982), for the proposition that the Countryman definition of executory contracts is too rigid, that the courts instead should look to the policy which underlies section 365, essentially one of promoting effective reorganization of the estate, in determining what is an executory contract in a given situation. In *Booth,* relying upon its perception of that policy, the court held that a real estate contract in which the debtor is the purchaser is not an executory contract subject to the provisions of section 365. The discussion of this issue in *Booth* is detailed and extensive, and the court makes a compelling argument for the soundness of its conclusion. Ultimately, however, *Booth* is not persuasive.

First, and most important, the court in *Booth* appears to have ignored the legislative history of section 365, and to have somewhat abandoned the usual rules of statutory construction. As stated above, Congress appears to have contemplated that the term "executory contract" should be given the meaning formulated by Professor Countryman: a contract in which performance remains due to some extent on both sides. A real estate contract falls within the scope of that definition. Moreover, section 365 itself specifically treats real estate contracts as executory contracts. Subsection (i)(1) states, "If the trustee rejects an executory contract of the debtor for the sale of real property ..., under which the purchaser is in possession, such purchaser may treat such contract as

terminated, or, in the alternative, may remain in possession of such real property...." The subsection goes on to set forth the rights and obligations of the parties when this situation arises.

Two conclusions flow from Congress' decision to include subsection (i) in the statute. First, Congress clearly viewed an uncompleted contract for the purchase of land where the purchaser is in possession as an executory contract. It concluded that section 365 does apply to such contracts, and that an express exception was necessary in order to deal with a potentially unfair situation that could arise from the statute's general application. Second, the fact that Congress was silent in regard to the situation in which the debtor is the purchaser under such a contract should not be interpreted as giving license to the courts to create an additional exception for debtor-purchasers. Congress' express action in the first situation, in conjunction with its silence in the second, compels the conclusion that Congress did not intend that an exception exist for a debtor-purchaser. As the court stated in *In re Roman Crest Fruit, Inc.,* 35 B.R. 939, 948, n. 7 (Bankr.S. D.N.Y.1983), in rejecting the holding of *Booth,* "That Congress expressly carved out exceptions ... proves the applicability of the general rule." If Congress had wished to create an exception to the general operation of section 365 for debtor-purchasers under a real estate contract, it could certainly have done so, as it did in the case of non-debtor purchasers. .For the court to create such an exception in these circumstances would be an invasion of the province of the legislature. This Court shall apply the statute as written. Accepted canons of statutory construction require the court to look to the express language of the statute, not at what Congress could or should have done. *Id.*

In *Booth,* the court held that the determination of whether a contract is executory, subject to section 365, should be

based upon an analysis of the nature of the parties and the goals of reorganization. It discussed the harsh effect that strict application of section 365 could have upon the estate, and characterized the situation as creating an unfair advantage for a seller under a real estate contract compared with a mortgagee or other secured creditor. However, the principle is well settled that in a bankruptcy proceeding state law ordinarily provides the guide for decision of property and contract issues. *E.g., Matter of Patch Graphics*, 32 B.R. 373 (Bankr.W. D.Wisc.1983). As Professor Countryman stated,

> [I]f the vendee becomes a bankrupt and his trustee finds it is not feasible to assume the contract and perforce rejects it, he will have no better rights than the vendee after default and may find that state law forfeits the payments already made. But this is only because the bankruptcy law now confines ... the vendee's trustee on the vendee's bankruptcy to the vendee's rights under state law. It need not do so. It could be written to invalidate state-tolerated forfeiture provisions in private contracts.

Countryman, *supra* at 473.

New Mexico courts have not held forfeiture provisions in real estate contracts invalid. In *Shindledecker v. Savage*, 96 N.M. 42, 627 P.2d 1241 (1981), the New Mexico Supreme Court stated that a purchaser under a real estate contract has an equitable interest in the land. The court stated that that interest is extinguished if the contract is extinguished by the purchaser's default. Similarly, New Mexico courts have not held that a real estate contract should be construed as a mortgage, or as merely creating in the seller a lien on the property. *See, Bishop v. Beecher*, 67 N.M. 339, 355 P.2d 277 (1960). New Mexico courts have stated that the seller under a real estate contract holds bare legal title as trustee for the purchaser, and as security for the purchase price. *Trickey*

*v. Zumwalt*, 83 N.M. 278, 491 P.2d 166 (1971); *Marks v. City of Tucumcari*, 93 N.M. 4, 595 P.2d 1199 (1979). Nevertheless, there is no indication that New Mexico courts have construed real estate contracts as anything other than an uncompleted contract for the purchase of land, the application of certain equitable principles notwithstanding.

In contrast, courts in other jurisdictions have construed real estate contracts as mere security devices. In both *Matter of Patch Graphics*, 32 B.R. 373 (Bankr.W.D. Wisc.1983), and *Matter of Charles Cox*, 28 B.R. 588 (Bankr.D.Idaho 1983), relied upon by appellant herein, the courts purported to follow the holding of *In re Booth, supra.* However, in both cases the courts noted that a real estate contract is construed as merely a security device or the functional equivalent of a mortgage under the laws of Wisconsin and Idaho, respectively. That is not the law in New Mexico. *Cf., Bishop v. Beecher*, 67 N.M. 339, 355 P.2d 277 (1960) (discussing advantages of this type of real estate financing to thousands of residential purchasers, and stating that there is no inequity in forfeiture considering that the buyer has retained land of great value for little money down, often for a long period of time).

The fact that the deed for the land at issue in this case was placed in escrow by the seller, for delivery to the purchaser upon completion of payment, does not constitute full performance of the contract by the seller, so as to render the contract non-executory. Performance, payment of the price by the buyer and delivery of the deed by the seller, remains due on both sides. "The commentators agree that a contract to sell real property is executory where the deed has not been delivered and the purchase price not paid in full." *In re Roman Crest Fruit, Inc.*, 35 B.R. 939 (Bankr.S.D.N.Y.1983).

The Bankruptcy Court was correct in ruling that the real estate contract at

issue in this case is an executory contract, subject to the provisions of 11 U.S.C. § 365. Whether an exception to the statute should be created for circumstances such as exist here is for Congress to decide. As the contract at issue falls squarely within the accepted definition of an executory contract, it must be treated as an executory contract.

Now, therefore,

IT IS BY THE COURT ORDERED that the orders of the United States Bankruptcy Court for the District of New Mexico, entered August 30, 1984 and October 29, 1984 in cause No. 11–83–00750 MA, are affirmed.