**In re Lowell Dean COFFMAN and Debra Lynn Coffman, Debtors.**

**Bankruptcy No. IP87–1450FP V.**

United States Bankruptcy Court, S.D. Indiana, Indianapolis Division.

July 5, 1988.

David R. Krebs, Ancel, Miroff & Frank, Indianapolis, Ind., for debtors.

Kevin B. McCarthy, Indianapolis, Ind., U.S. Trustee.

Jeffrey L. Hunter, Asst. U.S. Atty., Indianapolis, Ind.

Edward B. Hopper, II, Bamberger & Feibleman, Indianapolis, Ind., for objectors.

## ORDER DENYING CONFIRMATION OF FOURTH AMENDED PLAN AND DENYING MOTION TO STRIKE MEMORANDUM

RICHARD W. VANDIVIER,
Bankruptcy Judge.

This matter comes before the Court on the objection to confirmation of the Debtors' fourth amended plan by James E. Madden, Judy M. Madden and Marjorie M. Gadd ("the Objectors") and on the Debtors' Motion to strike a memorandum filed by the Objectors. For the reasons below, the Court determines that the fourth amended plan cannot be confirmed because it treats the Objectors' interest in certain land as a security interest instead of as an executory contract which must be either assumed or rejected and that the memorandum should not be stricken.

1. On August 12, 1978, the Debtors and the Objectors entered into a land sale contract ("the Contract") by which the Objectors agreed to sell to the Debtors approximately 257.95 acres of farmland ("the Farm"). The sale price was $283,745.00, with $25,000.00 down and $25,000.00 due each January 10 thereafter until January 10, 1988, at which time the balance would be due. Interest on the unpaid balance was 8%. After January 10, 1980, the Debtors could pay any additional amounts of principal. The Debtors could miss two annual payments, but the interest would still be due annually and the balance would still be due January 10, 1988. The Objectors executed a deed, which was placed in escrow, to be delivered to the Debtors on final payment. Until delivery, title was to remain in the Objectors and if the Debtors defaulted in their payments, they would lose their rights under the Contract and prior payments would be forfeited as liquidated damages.

2. The Debtors failed to make the payment due on January 10, 1987, and filed for relief under Chapter 12 of the Bankruptcy Code on March 12, 1987. The balance remaining under the Contract at the time of filing was $209,888.63, the Debtors having reduced the principal by $73,856.37, approximately 26% of the purchase price. Union County National Bank ("Union Bank") asserts a first mortgage on the Farm in the approximately amount of $85,000.00 as of February 1988.

3. The Debtors filed a third amended plan on August 31, 1987, in which they proposed to pay the Objectors $155,000.00, the asserted value of the Farm, over 25 years at 8% interest, with any remaining claim of the Objectors being treated as an unsecured claim. The Objectors filed their objection to that plan on October 5, 1987. A hearing on the value of the Farm was held on October 5, 1987, at which two appraisals were presented, one for $155,000.00 and one for $172,344.00. In their memorandum filed November 30, 1987, the Objectors contended that the third amended plan undervalued the Farm and that the Contract was an executory contract which must be assumed or rejected under 11 U.S.C. section 365.

4. On February 2, 1988, the Debtors filed a Motion to Obtain Secured Borrowing, in which they sought leave to borrow $155,000.00 from a bank to pay the Objectors the asserted amount of their secured claim. The Debtors filed their fourth amended plan ("the Plan") on February 8, 1988, in which they proposed to pay the Objectors $155,000.00 in cash (in part co-payable to Union Bank) in satisfaction of the asserted secured claim. Any remaining claim of the Objectors would be treated as unsecured. Union Bank objected to the motion to obtain secured funds unless the amount owing under their mortgage is satisfied by the secured borrowing and unless provision is made for the payment or escrow of $7000.00, representing the balance of the real estate commission under the Contract. The Objectors objected to both the Plan and the proposed secured borrowing as being based on an undervaluation of the Farm.

5. In March 1988, the Objectors retained new counsel, who on April 12, 1988, filed a motion for leave to amend the Objectors' previous objections by submitting for the Court's consideration a new appraisal, this one appraising the Farm at $212,800.00, and an offer by the Objectors to

purchase the Farm for $210,000.00. A hearing on the Debtors' motion to obtain secured borrowing was held on April 13, 1988, at which time the Objectors were granted leave to file an additional memorandum supporting their objections. The Objectors filed a memorandum on April 27, 1988, in which they asserted that the Contract was either void or must be assumed or rejected as an executory contract. On May 5, 1988, the Debtors moved to strike the memorandum, alleging misrepresentation of the evidence before the Court.

6. Before the Court are the Objectors' objection to the Plan, the Objectors' and Union Bank's objections to the motion to obtain secured borrowing, and the Debtor's motion to strike the Objectors' memorandum of April 27, 1988. The issue of the Farm's value was fully heard at the hearing of October 5, 1987, and the Court took the matter under advisement. The Court deferred hearing evidence on other issues relating to confirmation because it appeared that if the Debtors had undervalued the Farm, the Court could not confirm the third amended plan (or the Plan as now amended). The Court concludes, for reasons set forth below, that the Plan cannot be confirmed for a different reason—because the Contract is an executory contract and the Plan treats it instead as merely a security devise. Because the Court must deny confirmation of the Plan for this reason, it is unnecessary at this point to determine the value of the Farm. Because the motion to obtain secured borrowing was tailored to the provisions of the Plan, the Court will defer ruling on that motion, anticipating that it may be moot since the Plan cannot be confirmed. The Court will deny the motion to strike the Objectors' April 27, 1988, memorandum but will consider the Debtors' contentions that the Objectors have misrepresented the evidence if the Court at some point has to determine the Farm's value.

7. Whether the Contract is considered, for bankruptcy purposes, as an executory contract or merely a security device will have important effects on the Debtors' attempt to reorganize and the Objectors' rights, the most important of which, at this point, is on the ability of the Debtors to modify the rights of the Objectors through their Plan. *See* 11 U.S.C. sections 1222(b)(2) and (9), and 1225(a)(5). If the Contract is treated as merely a security device, the Objectors will have an allowed secured claim in the amount of the value of their collateral and an allowed unsecured claim for the balance of their claim. *See* 11 U.S.C. section 506(a). The Debtors' Plan could be confirmed if the value of the property to be distributed to the Objectors, as of the effective date of the Plan, is not less than the allowed secured claim, and if the Objectors would receive on the unsecured part of their claim, property of a value, as of the effective date of the Plan, that is not less than the Objectors would have received if the case had been a liquidation under Chapter 7, which according to the Plan would have been nothing. *See* 11 U.S.C. section 1225(a)(4) and (5). Accordingly, the Debtors' Plan proposes payment of the present value of the Farm, which they assert to be $155,000.00, in satisfaction of the "secured" portion of the Objectors' claim and treatment of any remaining claim as unsecured, to be paid *pro rata* with other unsecured claims from the Debtors' disposable income over the three years of the Plan.

8. In contrast, if the Contract is treated as an executory contract, the Debtors must either assume it or reject it under 11 U.S.C. section 365. If the Debtors wish to preserve their rights under the Contract, including their rights to continued possession, a deed and legal ownership, they must assume it, and at the time of assumption cure defaults, or provide adequate assurance that defaults will be promptly cured. *See* Section 365(b)(1). Since the entire balance under the Contract was due January 10, 1988, the Debtors cannot assume the Contract unless they provide payment or adequate assurance of prompt payment in full. If the Debtors reject the Contract, the Objectors would have a claim for breach of contract under state law, which, as discussed below, would include the right to either foreclose on the Farm or retake possession under the Contract's forfeiture

clause. If the Contract is an executory contract, the Debtor's Plan cannot be confirmed because it does not provide for prompt cure and performance of the Contract.

9. Although state law generally determines the nature of a debtor's interest in property, *In re Jones*, 768 F.2d 923, 927–28 (7th Cir.1985) (finding that under Indiana law, a vendor's interest under a land sale contract is not real property, and thus not exempt as real property in bankruptcy), the question of whether a land sale contract, or a contract for deed as it is sometimes called, is an executory contract for purposes of 11 U.S.C. section 365 is one of federal law, *In re Alexander*, 670 F.2d 885, 888 (9th Cir.1982). Courts have differed in their analysis of and conclusions on this issue. *See e.g. In re Speck*, 798 F.2d 279, 280 (8th Cir.1986) (contract for deed executory contract under South Dakota law); *In re Alexander*, 670 F.2d at 888 (contract for deed executory contract under federal definition and California law); *Shaw v. Dawson*, 48 B.R. 857, 860–61 (D.N.M.1985) (real estate contract executory contract under New Mexico law); *In re Scanlan*, 80 B.R. 131, 133 (Bankr.S.D.Iowa 1987) (real estate contract executory contract under Bankruptcy Code even if serving as security device under Iowa law); *In re Patch Graphics*, 32 B.R. 373, 374 (Bankr.W.D. Wis.1983) (land sale contract security device under Wisconsin law); *In re Booth*, 19 B.R. 53, 60–61 (Bankr.D.Utah 1982) (contract for deed treated as lien in furtherance of bankruptcy policies). This Court will consider three factors in resolving this issue: (1) the nature of the parties' relationship under state law, (2) the definition of executory contract under bankruptcy law and (3) the policies behind the bankruptcy laws.

10. It is well established under Indiana law that for some purposes, the vendor under a land sale contract will be treated as a mortgagee. In *Skendzel v. Marshall*, 261 Ind. 226, 301 N.E.2d 641 (1973), *cert. denied*, 415 U.S. 921, 94 S.Ct. 1421, 39 L.Ed.2d 476 (1974), the Indiana Supreme Court was faced with the question of whether to give effect to a forfeiture clause in a land sale contract when the purchaser had paid over half the contract price before defaulting. 301 N.E.2d at 644. The court discussed at length equity's abhorrence of forfeitures, concluding that the forfeiture of over half the purchase price as liquidated damages was inconsistent with principles of fairness and equity. *Id.* at 646. The court then discussed the legal relationship between vendor and purchaser under a land sale contract, concluding that "a conditional land sales contract [is] in the nature of a secured transaction, the provisions of which are subject to all proper and just remedies at law and in equity." *Id.* at 650. While forfeiture may be appropriate in the case of an abandoning, absconding purchaser or when the purchaser has paid a minimal amount and seeks to maintain possession while the vendor pays taxes, insurance and upkeep, the remedy for the vendor in *Skendzel* would be a judgment of foreclosure on the vendor's lien. *Id.* The court saw great wisdom in requiring judicial foreclosure rather than forfeiture, noting that perhaps the most attractive aspect of foreclosure was the period of redemption during which the purchaser could redeem his interest, possibly through refinancing. *Id.* at 649. *Skendzel* has been applied to require foreclosure in cases when the purchasers had made substantial payment toward the purchase price, *see e.g. Morris v. Weigle*, 270 Ind. 121, 383 N.E.2d 341 (1978); *McLendon v. Safe Realty, Corp.*, 401 N.E.2d 80 (Ind.App.1980); *Bartlett v. Wise*, 169 Ind.App. 125, 348 N.E.2d 652 (1976), and to allow forfeiture and repossession when the purchaser fell into the *Skendzel* exceptions, *see e.g. Phillips v. Nay*, 456 N.E.2d 745 (Ind.App.1983); *Goff v. Graham*, 159 Ind.App. 324, 306 N.E.2d 758 (1974).

11. While the court in *Skendzel* found land sale contracts to be "analogous" and "similar" to a mortgage arrangement, 301 N.E.2d at 647–48, a concurring opinion thought it appropriate that the purchaser make a clear showing that forfeiture would be inequitable because land sale contracts typically lack mortgage terms protecting a mortgagee, such as those for increased in-

terest during periods of default, acceleration of the balance, attorney fees and costs of foreclosure. *Id.* at 651 (Prentice, J. concurring). In a later case, two of the five justices urged overruling *Skendzel* based on the differences between the two types of arrangements. *See Morris v. Weigle,* 383 N.E.2d at 345–46 (Pivarnik, J., dissenting). The dissent pointed out that in a typical mortgage arrangement, a professional banking or financial institution holds the mortgage securing a note from the purchaser and the vendor receives full payment. A typical land sale contract is made between individuals to meet their particular needs, and because it can offer terms different from a mortgage. *Id.* at 345. This Court concludes that under Indiana law, as developed by *Skendzel* and its progency, the vendor's interest under a land sale contract is treated as a mortgagee's in cases when forfeiture of the purchaser's interests on default would work an inequitable penalty, but that a land sale contract and a mortgage are not identical. The *Skendzel* court itself recognized the hybrid nature of a land sales contract in noting that the remedy it proposed "is most often referred to as a foreclosure of an executory contract. (A land contract is "executory" until legal title is actually transferred to the vendee.)" *Skendzel,* 301 N.E.2d at 648.

12. "Executory contract" is not defined in the Bankruptcy Code. The legislative history indicates that Congress intended that the term mean a contract "on which performance remains due to some extent on both sides." S.Rep. No. 989, 95th Cong., 2d Sess. 58; H.R.Rep. No. 595, 95th Cong., 2d Sess. 347, U.S.Code Cong. & Admin.News 1978, pp. 5787, 5844, 6303. For further guidance, courts have turned to the much cited definition in Professor Countryman's article, *Executory Contracts in Bankruptcy: Part I,* 57 Minn.L.Rev. 439, 460 (1973): "a contract under which the obligation of both the bankrupt and the other party are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other." In a typical land sale contract, the purchaser is obligated to make periodic payments on the purchase price and the vendor is obligated to deliver a deed on full payment. Until final payment is made and a deed delivered, performance is due from both parties. Clearly default in payment by the purchaser would be a material breach. Although some courts seem to regard the vendor's duty to deliver the deed as a mere formality, the better reasoned approach recognizes that this is indeed the essence of the vendor's contractual duties. "To those who have always relied upon the intrinsic value of the land, holding the deed is more than a ministerial act, it is the ultimate protection." *In re Speck,* 50 B.R. 307, 308 (Bankr.D.S.D.), *aff'd,* 62 B.R. 61 (D.S.D. 1985), *aff'd,* 798 F.2d 279 (8th Cir.1986). The typical land sale contract thus falls into the definition of an executory contract for bankruptcy purposes. *See Shaw v. Dawson,* 48 B.R. at 860. The Code itself implicitly recognizes land sale contracts as executory contracts by making special provisions for the assumption or rejection of land sale contracts when the debtor is the vendor. *See* 11 U.S.C. section 365(i) and (j).

13. When a deed is executed and placed in escrow, to be delivered on full payment, there may be a question of whether the land sale contract is still executory. Although the vendor in such cases has performed the duty of executing the deed, the performance is only partial since delivery is not yet complete. *See Shaw v. Dawson,* 48 B.R. at 861; *In re Scanlan,* 80 B.R. at 134. The Court must look not only to what remains to be done by the vendor but also what remains to be received by the purchaser. When the deed is escrowed, the purchaser has yet to receive full performance. To distinguish land sale contracts on the basis of whether the deed was placed in escrow or was to be executed on full performance would honor form over substance.

14. The policy of giving debtors a fresh start and a chance to reorganize is central to the bankruptcy laws, and Congress indisputably intended to aid family farmers in rehabilitating their farming operations through the enactment of Chapter 12 of the Bankruptcy Code. This must however be

balanced with the protection and equitable treatment of creditors. Congress itself has struck what it believed to be a fair balance in its provision dealing with executory contracts, requiring a debtor who wishes to enjoy the benefits of an executory contract to assume the burdens also.

Although it would undoubtedly be easier from a reorganization standpoint to allow the debtors to treat a contract for deed as an ordinary security device, that was clearly not the intention of the parties at the time of the making of the contracts and to so hold now would be contrary to the intent of Congress and fly in the face of generations who have bought and sold land in this manner. The contract for deed is one of the few alternatives to commercial financing available, and it is especially well-suited to the realities of agricultural land sales. *In re Speck,* 50 B.R. at 308. In spite of the fact that much farmland is sold by land sale contract, the provision for assumption or rejection of executory contracts was not modified for Chapter 12 cases. *See Brown v. First National Bank,* 844 F.2d 580, 581 (8th Cir.1988).

15. Turning to the case before it, the Court concludes that the Contract is an executory contract under the Bankruptcy Code. Indiana law provides a purchaser under a land sale contract with the rights of a mortgagor when necessary to protect against inequitable forfeitures. In this case, the arrangement between the parties appears as much like a ten year agreement to cash rent with an option to purchase as it does a sale secured by a mortgage. The Debtors have paid only about 26 percent of the purchase price over ten years, during which time they have enjoyed the use of the Farm and a fairly low, fixed interest rate. Even though the *Skendzel* exceptions probably do not apply, forfeiture and repossession in accordance with the Contract terms may not be inequitable in this case, especially since the alternative, foreclosure, would do the Debtors little good. Through foreclosure proceedings, a purchaser would have the opportunity to redeem, perhaps through refinancing, and in the event of sale would benefit from any

equity in the property after the vendor was paid. Under the protection of the automatic stay, the Debtors have the opportunity to arrange for refinancing if they can, and their appraisal shows no equity in the Farm above the balance owing on the Contract to the Objectors. But this Court does not have to decide whether an Indiana court would allow forfeiture and repossession or require foreclose as a remedy. Even if the Debtors would be entitled to a mortgagor's rights under Indiana law, the Court concludes that the Contract is still an executory contract under the Bankruptcy Code. Performance remained by both parties and failure to perform by either side would have been a material breach. Congress intended debtors in such situations to assume the burdens of a contract if they wished to enjoy the benefits.

16. Because the Contract is an executory contract, the Debtors' Plan cannot be confirmed because it fails to either assume or reject that Contract under 11 U.S.C. section 365, but treats it instead as merely a security device.

The Court therefore:

1. DENIES confirmation of the Debtors' fourth amended plan, and

2. DENIES the Debtors' motion to strike the Objectors' memorandum of April 27, 1988.

SO ORDERED.