**In re Dennis Walter HUGHES and Donna Lynn Hughes, Debtors.**

**Michael J. PATRICK, Plaintiff,**

v.

**Dennis Walter HUGHES and Donna Lynn Hughes, Defendants.**

**Adv. No. 88–0249–BKC–J13.**

**Bankruptcy No. 88–02220–BKC–J13.**

United States Bankruptcy Court, E.D. Missouri, E.D.

April 20, 1989.

Timothy J. Walk, Clayton, Mo., for plaintiff.

Brock M. Weidner, St. Ann, Mo., for defendants.

FINDINGS AND CONCLUSIONS

JAMES J. BARTA, Chief Judge.

This matter is before the Court on the Plaintiff's complaint to allow his claim against the Debtors' Chapter 13 estate. Both parties presented testimony and other evidence at the trial of this matter on April 17, 1989. At the conclusion of the oral arguments, the Court announced its Findings and Conclusions and Orders from the bench.

This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B). The Debtors' Chapter 13 Plan which provides for a 100% payment to all allowed claims, was confirmed on September 8, 1988. Michael J. Patrick, the Plaintiff here, is scheduled as the holder of a secured claim based upon a "Car Sublease" for a 1986 Mercury. At the confirmation hearing, the Court determined that the agreement between Donna Lynn Hughes and Michael Patrick (the "Car Sublease") was in fact an executory contract. The Debtors rejected the executory contract when they determined that they were unable to promptly cure the pre-petition and post-petition defaults. As a result of this rejection, the Plaintiff filed this Adversary Proceeding for damages to be paid through the confirmed plan.

The parties' agreement is set out in a three-page document captioned, "Motor Vehicle Sublease Agreement." *See* Plaintiff's Exhibit # 16. The Plaintiff testified that the document was a lease-purchase agreement whereby Donna Lynn Hughes promised to pay $196.45 each month for 46 months. The document also contained a section headed, "Option Agreement" whereby the "Optionee" (presumably Don-

na Lynn Hughes) was granted the exclusive right to purchase the motor vehicle for the price of "$10,536.70 plus residual."[1] Donna Lynn Hughes did not receive a certificate of title to the motor vehicle when she took delivery. There is some evidence in this record to suggest that at all times here, the vehicle was titled to the Plaintiff, subject to a lien to Ford Motor Credit.[2] The location of the title and other documents of ownership was not conclusively established at this trial.

The Court has concluded that as a matter of law, the "Motor Vehicle Sublease Agreement" was an executory contract which was rejected by the Debtors as part of their Chapter 13 Plan. *See, Speck v. First National Bank of Sioux Falls*, 798 F.2d 279 (8th Cir., 1986), and *Shaw v. Dawson*, 48 B.R. 857 (D.N.Mex.1985) for definitions.[3]

The Plaintiff testified that in September, 1986, he purchased this vehicle for the price of $10,050.00, which is accepted as its fair market value at that time. Although Donna Lynn Hughes agreed to pay a total of $10,536.70 for the same car eleven months later, the Court has found that the vehicle's value at that time was approximately $8,000.00 according to Plaintiff's testimony. Neither party's personal-opinion, non-expert testimony as to the vehicle's value after the commencement of this case was convincing. In view of the Court's other findings and conclusions, however, a judicial determination of the post-petition value is not necessary to this proceeding. A review of the Debtors' Chapter 13 Statement reflects that at the commencement of this case (July 8, 1988), the vehicle's market value was $7,250.00.

The statutory authority for Plaintiff's complaint in this matter is Sections 365(g) and 502(g) of Title 11 of the United States Code. The record has not suggested any basis upon which the Court may allow all or a portion of Plaintiff's claim as a priority expense of administration pursuant to 11 U.S.C. § 503(b)(1)(A). Therefore, Plaintiff's claim, if allowed, is a pre-petition general unsecured claim resulting from the rejection of an executory contract.

During the period between the transfer of the vehicle to the Debtors, and the repossession by the Plaintiff, the vehicle was in the possession of and under the control of the Debtors. The liability for any damage to the vehicle which may have occurred during this period may be based upon the parties' agreement, or may have arisen by operation of law. Plaintiff's complaint and the evidence and arguments of trial indicate that the Debtors' duties were contractual as set out in the Sublease Agreement. Paragraph 6 of the Agreement describes the Debtors'[4] duties and responsibilities to the Plaintiff. The Debtors agreed to keep the vehicle in good order, appearance and repair, and properly serviced and lubricated at their expense. *See*, Plaintiff's Exhibit #16, page 1.

The Plaintiff's unrefuted testimony was that at the time of transfer to Donna Lynn Hughes, the vehicle was in excellent condition but for normal depreciation. However, at the time of repossession approximately one year later, the vehicle had extensive exterior and frame damage. Plaintiff's expert testified that the cost to repair this damage would be approximately $5,447.76.

1. This price is $1,500.00 more than the total amount of monthly payments under the Motor Vehicle Sublease Agreement. Other provisions of the parties' agreement refer to the Optionee's payment of $1,500.00 to the Optionor's Marketing Agent.

2. The Debtors attempted to establish that the Sublease Agreement violated the terms of the security agreement between the Plaintiff and Ford Motor Credit. None of the Ford Motor Credit documents were introduced at trial, and the Plaintiff denied any violation of the agreement.

3. The distinctions between a "true lease" and a financing arrangement were not raised in this proceeding and are not discussed further here. At all times here, legal title remained with an entity other than the Debtors.

4. Although the agreement was signed only by Mrs. Hughes, Mr. Hughes' testimony indicated that the agreement was part of the joint Chapter 13 case.

Other damage included scratches to the interior trim, soiled upholstery and other damage to visors and interior items. The Court finds that not all of this damage resulted from the Debtors' failure to properly maintain the vehicle. The Plaintiff's expert testified that the cost to repair and replace the interior items would be $2,230.00. To the extent that this figure includes repairs for normal wear and tear, the Court rejects the Plaintiff's request for payment from the Debtors.

The Plaintiff also described certain mechanical damage to the vehicle which had not existed when the vehicle was transferred to Donna Lynn Hughes. Plaintiff was unable to present expert testimony as to the nature of the damage or as to the cost of any repairs. The Court, therefore, must find and conclude that the record has not established the extent of the damage or the amount which may be recoverable from the Debtors.

Therefore, the Court has determined that the Debtors failed to comply with the terms of the Agreement as set out at Paragraph 6, in that they did not maintain the vehicle in good order, appearance and repair; and that as a result of this failure, the Plaintiff is entitled to prosecute a claim in this Chapter 13 case equal to the amount necessary to repair the damage attributable to the Debtors, based upon their contractual responsibilities. The exterior damage to the frame and body occurred while the vehicle was in the Debtors' custody, and from a cause other than normal wear and tear. The Plaintiff's claim will include these repair costs. However, the record did not present an adequate basis upon which the Court may determine the extent of interior damage which may have resulted from the Debtors' failure under the agreement. Plaintiff's request to allow the claim for the interior damage and for the mechanical damage is, therefore, denied.

Although the Debtors had not made their payments to the Plaintiff in a timely manner, they were only one payment behind when the Plaintiff recovered possession. That payment may be allowed as part of this claim.

By separate order, judgment is entered for the Plaintiff in that his proof of claim in this Chapter 13 case is allowed in the amount of $5,447.76 plus $196.45 as a pre-petition, general unsecured claim resulting from the Debtors' rejection of an executory contract.