**In re BELLAMAH COMMUNITY DEVELOPMENT, a New Mexico general partnership, Employer ID No. 85–0296658, Debtor.**

**Bankruptcy No. 11–89–01559 M. A.**

United States Bankruptcy Court,
D. New Mexico.

Nov. 16, 1989.

---

Bill Chappell, Jr., Donald C. Cox, Albuquerque, N.M., for debtor.

Leonard K. Martinez–Metzgar, Office of the U.S. Trustee, Albuquerque, N.M.

## MEMORANDUM OPINION

MARK B. McFEELEY, Bankruptcy Judge.

This matter came before the Court on Robert W. Lewis' Motion to compel assumption or rejection of executory contract. Having considered the arguments of counsel, and being otherwise fully informed and advised, the Court issues this memorandum opinion.

FACTS

On October 16, 1985, Bellamah Community Development (buyer), Robert W. Lewis (seller), and Pioneer Trust Company of Arizona (trustee), entered into a trust agreement. The agreement involves the conveyance of a tract of land in Pima County, Arizona. The purchase price is $471,-

008.00, with an initial payment of $141,-302.40 and assumption of certain notes and deeds of trust in the amount of $64,217.79. The balance of the purchase price, $265,-487.81 plus interest at 11% per annum is to be paid in equal annual installments in the amount of $71,833.12. The first installment was due October 15, 1986, and the entire balance is to be paid October 15, 1990. Bellamah has made two annual installment payments totalling $143,666.24 for 1986 and 1987. Payments have not been made for 1988 and 1989. Trust agreements such as this one are utilized in Arizona. Lewis conveyed legal title to the land to the trustee, which holds the property for the benefit of both the seller, as first beneficiary, and the buyer, as second beneficiary. The trustee has duties as specified in the trust agreement, among which is to collect and distribute funds, and release the property as it is sold. Bellamah was given possession of the property and the right to develop and sell the land. Upon default, Lewis is required to submit written instruction to the trustee declaring a default. Upon direction of Lewis, the first beneficiary, the trustee must then serve a notice of default on Bellamah, the second beneficiary. If not remedied within 30 days, Lewis may elect to accelerate the sums due by giving written notice to the trustee. Forfeiture is achieved by written instruction to the trustee, which serves a notice and declaration of forfeiture upon Bellamah. Under Arizona Revised Statutes § 33–742, there is a nine month redemption period after default. Upon failure to correct the default, all unreleased property, legal and equitable interest and sums paid by Bellamah revert to and vest in the trustee for the benefit of Lewis. Thereafter, Lewis may instruct the trustee to convey all unreleased property and funds to Lewis within 30 days.

DISCUSSION

 Lewis asserts that the trust agreement is an installment land sales contract and as such is an executory contract

for the purposes of 11 U.S.C. § 365.[1] Bellamah argues that the land sale contract is not an executory contract as contemplated by 11 U.S.C. § 365 but is a lien or mortgage device which is not an executory contract.

The question becomes important in that the two are treated differently under the Bankruptcy Code. An executory contract must be assumed or rejected. 11 U.S.C. § 365(d)(2). If the installment land contract is an executory contract and is assumed, any default must be cured, damages paid and adequate assurance of future performance given. 11 U.S.C. § 365(b)(1). No modification of the terms is allowed without agreement of the contracting parties. *In re McDaniel*, 89 B.R. 861, 863 (Bankr.E.D.Wash.1988). On the other hand, if the installment land contract is a security device or mortgage, the default does not need to be cured and payment may be modified. Valuation of the property can be requested, after which payment is made based on current value. 11 U.S.C. § 1129(b). Any deficiency becomes an unsecured claim. 11 U.S.C. § 506(a). Thus, it is more beneficial for the debtor who wishes to retain property, if the contract is treated as a lien or mortgage, rather than as an executory contract. *McDaniel*, 89 B.R. at 863–64; *In re Booth*, 19 B.R. 53 (Bankr.D.Utah 1982).

 Further, Bellamah asserts that the question whether a contract is executory is controlled by federal law. We disagree.

Under New Mexico conflict of law rule, when interpreting a contract, the Court should look to the law of the state where the contract was consummated. A contract is consummated where the last act necessary to its formation takes place. *In re Bennett*, 51 B.R. 619 (Bankr.D.N.M. 1984) (citing *Pound v. Insurance Co. of North America*, 439 F.2d 1059 (10th Cir. 1971)). Also in *Shaw v. Dawson*, 48 B.R. 857 (D.N.M.1985), the court applied state

---

1. 11 U.S.C. § 365(a) provides that the trustee may assume or reject any executory contract of the debtor. 11 U.S.C. § 365(b) provides that if there is a default in the contract by the debtor, the trustee must cure the default, compensate for any loss resulting from the default, and provide adequate assurance of future performance.

law to determine whether a contract was an executory contract. In the case at bar, the trust agreement was consummated in Arizona. Therefore, Arizona law applies.[2]

There is no Arizona case law which discusses whether a trust agreement is executory. However, *Lane Title and Trust Co. v. Brannan*, 103 Ariz. 272, 440 P.2d 105 (1968), is helpful in that it examines the characteristics of an Arizona subdivision trust. The main issue was whether the duties and liabilities of a subdivision trustee are the same as that of a common law trustee. The trustee argued that the fiduciary duty is not as strict as that of a common law trustee because a subdivision trust is more like a deed in trust or mortgage rather than a common law trust. *Id.* at 275–76, 440 P.2d at 108–09.

In deciding the issue, the court stated that the subdivision trust was created to fill the need for purchasers of large subdivisions for development, who have a shortage of capital. The trust allows payment for the land with proceeds received on the sale of subdivided lots. *Id.* at 276, 440 P.2d at 109. Title is transferred to a trustee in trust for the seller's and buyer's respective interests. The seller receives a down payment and instead of taking a mortgage for the balance, the seller has an equitable interest in the land under the trust. The trustee applies the proceeds of sales of lots toward the debt. Upon performance by the buyers, the trustee conveys the lots to the purchasers. The buyer is entitled to possession of the property with the authority to make improvements. *Id.*

█ The court compared a subdivision trust with a mortgage, and stated that "merely because a subdivision trust can be used as a security device in place of a mortgage does not mean that it is to be treated as a mortgage." *Id.* at 277, 440 P.2d at 110. In Arizona a mortgagor retains legal title while a mortgagee has a lien, and while the mortgagor retains possession, there can be no roads or subdivisions without consent of the mortgagee. Also, in Arizona, a mortgage may be foreclosed by court action only, with a period of redemption. The subdivision trust eliminates several restrictions inherent in the use of a mortgage. *Id.* The court held that a subdivision trust is to be treated as a common law trust governed by the provisions of the instrument creating it or general trust law. *Id.* at 278, 440 P.2d at 111.

█ Another Arizona case attempted to distinguish between installment land contracts and executory earnest money contracts for the sale of land, and holds that two prior "earnest money" payments did not constitute "installments" or partial payments under typical installment land contracts. *Brigham v. First National Bank of Arizona*, 129 Ariz. 160, 162, 629 P.2d 996, 998 (Ct.App.1981). The court was contrasting the "ordinary executory contract ... known as a 'binder, a marketing contract, or an earnest money contract,'" with an installment land contract, rather than discussing whether an installment land contract is itself an executory contract, and is distinguishable on that basis. The case stands for the proposition that an earnest money deposit, with the purchase price due at closing, is not an installment contract so as to apply the nine month statutory period for forfeiture under Arizona law. *Id.*

It is the Court's opinion that the trust agreement is similar to an installment land contract rather than a lien or mortgage. The trustee serves a similar function to that of an escrow agent, the primary difference being that legal title is conveyed to the trustee, whereas an escrow agent holds a warranty deed. However, both trustee and escrow agent collect and distribute funds and convey title to the purchasers upon payment for the property. Under both a trust and a typical installment sales contract there is a provision for default and forfeiture without the necessity of court action as is required with a mortgage. Therefore, we shall continue the analysis

---

**2.** Bellamah cites three Ninth Circuit cases for the proposition that federal law controls, however, this Court is not bound by those decisions. *See In re Cochise College Park Inc.*, 703 F.2d 1339 (9th Cir.1983); *In re Alexander*, 670 F.2d 885 (9th Cir.1982); *In re Rehbein*, 60 B.R. 436 (9th Cir.B.A.P.1986).

on the premise that the trust agreement should be treated as an installment land contract rather than a mortgage.

■ The courts are split on the issue of whether an installment land sales contract is an executory contract or a lien/mortgage device. Congress did not define the term "executory contract", however, the definition of an executory contract has been set forth by Professor Vern Countryman and is widely accepted.

A contract under which the obligations of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other.

Countryman, *Executory Contracts in Bankruptcy: Part I,* 57 Minn.L.Rev. 439, 460 (1973). Legislative history follows this definition as a contract "on which performance remains due to some extent on both sides." *Shaw v. Dawson,* 48 B.R. at 859, (citing S.Rep. No. 989, 95th Cong., 2d Sess. 58, *reprinted in* 1978 U.S.Code Cong., & Admin.News 5787, 5844; H.R.Rep. No. 595, 95th Cong., 2d Sess. 347, *reprinted at* 1978 U.S.Code Cong. & Admin.News 5787, 5963, 6303). Bellamah cites several cases which stand for the proposition that an installment land sales contract is not an executory contract. Primarily, the reasoning lies in the fact that the only obligation left to perform on the sellers part is to deliver the deed to the buyer, which is deemed to be an insufficient obligation to rise to the level of an executory contract. Further in some cases, in determining whether the contract is executory, the courts viewed the contract with policy considerations to determine if there was benefit to the estate. Thus, only if the estate is benefitted and

the debtors rehabilitation furthered, is the installment land sale contract treated as executory.[3] *In re Booth,* 19 B.R. 53 (Bankr.D. Utah 1982), specifically described these policy concerns.

This jurisdiction rejected the analysis and conclusion in *Booth* in *Shaw v. Dawson,* 48 B.R. 857 (D.N.M.1985). *Shaw* is similar to the instant case. The chapter 11 debtor was in the real estate development business and the land in question was being purchased by the debtor with the intent to develop it. The court stated that "a New Mexico real estate contract ... appears to fall squarely within the Countryman definition of an executory contract," which is within the definition contemplated by Congress. *Id.* at 860. Obligations on both sides are still unperformed. The obligation of the buyer is to pay the purchase price under the terms, and the seller must yet deliver title when full payment has been rendered. The *Shaw* court stated that the "failure of either party to complete performance would constitute a material breach of the contract." Thus, the court held that the real estate contract was executory. *Id.*[4]

The *Shaw* court further stated that Congress recognized land sale contracts as executory in 11 U.S.C. § 365(i)(1), which describes the rights of a vendee when the debtor is the vendor. Congress could have made an exception where the debtor is the vendee but did not. *Shaw,* 48 B.R. at 860.

Under the trust agreement in the instant case, the sole right and power of the beneficiaries is to enforce the performance of the terms of the trust. Bellamah is still obligated to pay the purchase price. Lewis as the seller has several obligations. As first beneficiary he cannot cause or permit

---

**3.** *See In re Rehbein,* 60 B.R. 436 (9th Cir.B.A.P. 1986); *In re Thurmond,* 46 B.R. 723 (D.Or.1985); *In Re McCallen,* 49 B.R. 948 (Bankr.D.Or.1985); *In re Cox,* 28 B.R. 588 (Bankr.D. Idaho 1983). *See also In re Faiman,* 70 B.R. 74 (Bankr.N.Dak. 1987); *In re Bertelsen,* 65 B.R. 654 (Bankr.C.D. Ill.1986); *In re Adolphsen,* 38 B.R. 776 (Bankr. Minn.1983); *In re Booth,* 19 B.R. 53 (Bankr.D. Utah 1982).

**4.** For a line of cases holding that an installment land contract is an executory contract, *see*

*Brown v. First Nat'l Bank in Lenox,* 844 F.2d 580 (8th Cir.1988); *In re Speck,* 798 F.2d 279 (8th Cir.1986); *Shaw v. Dawson,* 48 B.R. 857 (D.N.M. 1987), *In re Henke,* 84 B.R. 693 (Bankr.D.Mont. 1988); *In re Scanlan,* 80 B.R. 131 (Bankr.S.D.Ia. 1987) *In re Rancho Chamberino,* 77 B.R. 555 (Bankr.W.D.Tex.1987). *In re Buchert,* 69 B.R. 816 (Bankr.N.D.Ill.1987); *In re Waldron,* 65 B.R. 169 (Bankr.N.D.Tex.1986); *In re Anderson,* 36 B.R. 120 (Bankr.D.Haw.1983).

a lien or encumbrance to become a cloud on the title to any trust property. Article II. In the event Bellamah fails to pay taxes, Lewis has the right to advance funds to pay them. Article VII. Upon default, Lewis must declare a default by giving written instruction to the trustee. It must specify the nature of the default or breach. Bellamah is not deemed in default until Lewis completes the written instruction. Article X. The trustee has no independent authority under the trust to declare the default. Lewis may elect to accelerate the sums due if Bellamah fails to cure the default within thirty days. Lewis must give the trustee written notice of the election which becomes effective upon receipt by the trustee. If Lewis elects to accelerate he must cause notice of the election to be served on Bellamah by the trustee. If the default is not cured, Lewis may pursue any remedy at law or in equity or as an alternative may enforce a forfeiture. Lewis must give written instruction to the trustee to serve a notice and declaration of forfeiture to Bellamah. Upon failure by Bellamah to cure the default within the statutory period, all right, estate and interest created by the trust agreement existing in favor of Bellamah in unreleased property become void, and all equitable and legal interest, along with all sums of money paid by Bellamah revert and vest in the trustee for the benefit of Lewis. After the forfeiture is completed, Lewis may instruct the trustee to convey all unreleased property and to deliver all funds held by the trustee to Lewis within 30 days. Article X. Lewis must be available to give approvals or consents under the trust. Article XXXII. And shall give from time to time and within 30 days after request from Bellamah, a statement in writing certifying that the trust agreement is unmodified or if modified, to what extent, and acknowledging that there are no uncured defaults or specifying such defaults. These statements may be relied on by prospective purchasers. Article XXXII.

Thus, under the trust agreement both Bellamah and Lewis have unperformed obligations. The trust agreement is similar to an installment land contract which is held to be an executory contract under *Shaw*. Bellamah must pay the purchase price and title must be delivered by the trustee, who performs the function of the escrow agent. Lewis has other obligations under the trust as outlined above, and must enforce the terms of the trust upon default to effectuate a forfeiture. Therefore, this Court holds that the trust agreement is an executory contract within the meaning of 11 U.S.C. § 365 and must be either assumed or rejected.

An appropriate order shall enter.